**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION—AMTRAK,<br><br>                          Petitioner,<br><br>                    v.<br><br>METRO-NORTH COMMUTER RAILROAD COMPANY,<br><br>                          Respondent. | Civil Action No. 26-cv-3339<br><br>**PETITION FOR A PRELIMINARY INJUNCTION IN AID OF ARBITRATION** |

Petitioner National Railroad Passenger Corporation ("Petitioner" or "Amtrak"), by and through its undersigned attorneys, for its Petition for a Preliminary Injunction in Aid of Arbitration, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.     This is a petition for a preliminary injunction in aid of a binding arbitration between Petitioner and Respondent Metro-North Commuter Railroad Company ("Respondent" or "Metro-North").  Petitioner and Respondent are parties to two operating agreements, each governed by New York law:  (i) an Agreement for Operation Between New Rochelle and New Haven, dated November 1, 1991, as amended (the "New Haven Agreement"); and (ii) an Agreement for Operation on the Hudson Line, effective January 1, 1990, as amended (the "Hudson Agreement," and together with the New Haven Agreement, the "Agreements").  Each Agreement contains a binding arbitration clause requiring that disputes relating to the interpretation, application, or implementation of the Agreements be submitted to arbitration.  A dispute has arisen between the parties that is subject to arbitration under the Agreements.

1

2.     Petitioner seeks an order pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Respondent from continuing to deny Amtrak's requests for non-revenue train movements on Metro-North's tracks on grounds unrelated to Metro-North's physical or financial capabilities or its operating restrictions and safety standards, which are the only bases on which the Agreements permit Metro-North to decline a timely request.  The injunction should remain in effect during the pendency of any arbitration or, at a minimum, until an arbitration tribunal is constituted and able to award interim relief.  Metro-North's recent denials have affected, among other things, operation of Amtrak's track geometry inspection cars, commissioning runs for Amtrak's NextGen Acela trains, and repositioning of passenger equipment for periodic inspection and maintenance.

3.     The Agreements' arbitration provisions do not incorporate any institutional arbitration rules (such as those of the AAA, JAMS, or ICC) and do not provide any mechanism for emergency or interim relief.  Moreover, the arbitration process established by the Agreement is lengthy.  Under Article VI of the New Haven Agreement and Article VI of the Hudson Agreement, after the initiating party serves notice designating one arbitrator, the responding party has fifteen days to designate a second arbitrator, and the two party-appointed arbitrators then have an additional fifteen days to appoint a third arbitrator to serve as chairman.  Ex. A, Art. VI(a)-(c); Ex. B, Art. VI(a)(1)-(3).  Accordingly, the arbitral panel may not be constituted and able to act for thirty days, and potentially longer.

4.     Because the Agreements contain no mechanism for emergency or interim relief pending the constitution of the arbitral tribunal, this Court is the only forum capable of granting emergency relief preserving the status quo and avoiding irreparable harm to Amtrak while the arbitration procedures in the Agreements play out.  If no injunction is issued pending the arbitration

of the parties' dispute, Amtrak will suffer irreparable harm and any eventual award by the arbitrators will become a hollow formality.

## PARTIES

5.      Petitioner Amtrak is a corporation organized under the Rail Passenger Service Act, 45 U.S.C. § 541 *et seq.*, and the laws of the District of Columbia, having its principal offices at 1 Massachusetts Avenue, N.W., Washington, D.C. 20001.  The United States is the owner of more than one-half of Amtrak's capital stock.  Amtrak operates intercity passenger rail services on Metro-North's New Haven Line and Hudson Line pursuant to the Agreements.

6.      Respondent Metro-North is a public-benefit corporation of the State of New York and a subsidiary of the Metropolitan Transportation Authority, having a place of business at 420 Lexington Avenue, New York, New York 10170.  As relevant here, Metro-North controls and operates the tracks and facilities on the New Haven Line between New Rochelle, New York, and New Haven, Connecticut, and on the Hudson Line between New York City and Poughkeepsie, New York.

## JURISDICTION AND VENUE

7.      This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1349 because Amtrak was incorporated by an Act of Congress and the United States is the owner of more than one-half of its capital stock.  Because the parties have agreed to arbitrate in their Agreements, this Court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration.

8.      This Court has personal jurisdiction over Respondent because Respondent is a public-benefit corporation of the State of New York, maintains its principal offices in Manhattan,

3

and agreed to arbitrate disputes under the Agreements, which contemplate performance within this State.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Respondent resides in this district, a substantial part of the events giving rise to this action occurred in this district, and the Agreements contemplate the operation of Amtrak's passenger train service through this district.

**FACTS**

*A.      The Agreements and Their Arbitration Clauses*

10.     For more than thirty years, the relationship between Amtrak and Metro-North has been governed by the Agreements.  The Hudson Agreement sets the terms of Amtrak's operations on the Hudson Line between New York City and Poughkeepsie, New York.  Jagodzinski Decl., Ex. A.  The New Haven Agreement, dated November 1, 1991, sets the terms of Amtrak's intercity rail passenger operations on the New Haven Line between New Rochelle, New York, and New Haven, Connecticut.  Jagodzinski Decl., Ex. B.

11.     Under Section 3.1 of the Agreements, Metro-North is required to provide Amtrak with "the use of facilities and the services requested by [Amtrak] for or in connection with the operation of Amtrak's trains" on the respective lines.  Ex. A, § 3.1; Ex. B, § 3.1.  Under Section 3.2 of the Agreements, Amtrak has the right to request "modified or additional services" in connection with the operation of its trains, and Metro-North is required to provide such services upon the filing by Amtrak of a timely request, subject only to Metro-North's "physical and financial capabilities" and its "speed, weight and similar operating restrictions and rules and safety standards."  Ex. A, § 3.2(A); Ex. B, § 3.2(A).  Metro-North "further agrees to provide and furnish

4

all labor, materials, equipment and facilities necessary to perform the services to be provided under Sections 3.1 and 3.2." Ex. A, § 3.3(A); Ex. B, § 3.3(A).

12.     Each Agreement contains a binding arbitration clause in Article VI.  Article VI provides that the parties agree to make a good faith effort to resolve any dispute, claim, or controversy relating to the interpretation, application, or implementation of the Agreement, and that any such dispute that cannot be resolved by agreement shall be submitted to binding arbitration.  Ex. A, Art. VI; Ex. B, Art. VI.  The arbitration clause establishes an ad hoc process: the initiating party designates one arbitrator; within fifteen days the responding party designates a second; and within a further fifteen days the two party-appointed arbitrators appoint a third to serve as chairman.  Ex. A, Art. VI(a)-(c); Ex. B, Art. VI(a)(1)-(3).  The arbitration clause does not incorporate any institutional arbitration rules and does not provide any mechanism for emergency or interim relief.

**B.      *The Underlying Dispute***

13.     For more than thirty years, both parties understood and applied the Agreements to cover all of Amtrak's train movements on the relevant Metro-North lines, including non-revenue movements such as the operation of track geometry inspection cars, commissioning runs for new trainsets, and repositioning of passenger equipment.  Metro-North previously approved Amtrak's requests for such movements without objection, and prior to the events described below, rarely denied them.

14.     On or around March 18, 2026, Metro-North began systematically denying Amtrak's requests for non-revenue train movements on both the New Haven Line and the Hudson Line.  Metro-North's blanket denials are not grounded in any physical or financial incapacity,

operating restriction, or safety concern, which are the only bases on which the Agreements permit Metro-North to decline a timely request.

15. Metro-North's denials have affected, among other things: (a) the operation of Amtrak's track geometry inspection car, which Amtrak must operate every two weeks to meet federal safety regulatory requirements imposed by the Federal Railroad Administration ("FRA"); (b) commissioning runs for Amtrak's NextGen Acela trainsets, which cannot be placed into revenue service until they have completed a commissioning run; and (c) repositioning of Amtrak passenger equipment for periodic inspection and maintenance, the denial of which has already caused Amtrak to cancel and delay revenue service trains. To date, Metro-North has denied at least eight requests by Amtrak for non-revenue train movements on the relevant Metro-North lines.

16. Upon information and belief, Metro-North's denials are connected to an unrelated dispute regarding liability for certain repairs to the New Haven Line's overhead wire system, or catenary, which Metro-North says were caused by the pantograph[1] on a NextGen Acela train. Whatever the merits of that separate dispute, Metro-North is not entitled under the Agreements to deny Amtrak's contractual right to operate trains on Metro-North's lines as leverage in a negotiation over a separate matter.

## C.    *Need for Preliminary Injunctive Relief*

17. Metro-North's ongoing denials are causing escalating harm to Amtrak's operations and to the traveling public. Amtrak's inability to reposition its equipment along Metro-North's lines has already forced Amtrak to cancel and delay passenger train runs. Amtrak's inability to perform commissioning runs for its NextGen Acela trains is crippling its efforts to replace train

---

[1] A pantograph is a roof-mounted apparatus that collects power for the train from an overhead line.

cars that are aging out of service and modernize its fleet.  And Amtrak's inability to operate track geometry cars when requested has forced Amtrak to run some passenger trains at slower speeds to meet the federal requirements for safety inspections.  Moreover, if Amtrak is unable to complete geometry car runs as required by federal regulations, the consequences would escalate rapidly.  Progressively severe speed reductions would follow, from 160 mph to 125 mph after fifteen days, to 110 mph after 45 days, and eventually, to 90 mph, at which point systematic cancellations of Amtrak's revenue train service would be unavoidable.

18.    A dispute subject to the Agreements' arbitration clauses has arisen between the parties, and arbitration proceedings may be instituted imminently.  Under the Agreements' arbitration procedures, once either party initiates an arbitration, the arbitral tribunal can take thirty days or longer to be constructed.  Ex. A, Art. VI; Ex. B, Art. VI.  In the interim, no mechanism exists under the Agreements for obtaining emergency or interim relief from an arbitrator or arbitral institution.

19.    Amtrak has repeatedly requested that Metro-North return to the status quo and cease its systematic denials of Amtrak's non-revenue train movements, consistent with the parties' more than thirty years of practice under the Agreements.  Metro-North has not confirmed that it will do so, and has continued to deny Amtrak's requests.

**D.    *Petitioner Satisfies the Requirements for Preliminary Injunctive Relief***

20.    *Sufficiently Serious Question Going to the Merits.*  There is at least a sufficiently serious question going to the merits to warrant an injunction.  The Agreements plainly require Metro-North to permit non-revenue runs upon Amtrak's timely request, subject only to physical and financial capabilities and operating restrictions.  Ex. A, §§ 3.1, 3.2(A), 3.3(A); Ex. B, §§ 3.1, 3.2(A), 3.3(A).  Metro-North has systematically denied Amtrak's requests for non-revenue runs

7

on grounds unrelated to those in the Agreements.  Metro-North has conditioned its performance on the resolution of a separate and unrelated dispute, which the Agreements do not authorize, and more recently has denied non-revenue runs on the pretext of unelaborated operational concerns, though no such concerns appear to exist.  The parties' more than thirty-year course of performance confirms that Amtrak is entitled to run non-revenue trains under the Agreements.  Metro-North's conduct constitutes a breach of its obligations under the Agreements, or, in the alternative, a breach of the implied covenant of good faith and fair dealing.  These claims are subject to arbitration under Article VI of the Agreements and can be adjudicated in arbitration.

21.     *Irreparable Harm.*   Amtrak will suffer irreparable harm absent a preliminary injunction.  Metro-North's denials are forcing Amtrak to cancel, delay, and slow its passenger trains, degrading the speed and reliability of service that Amtrak provides to its passengers.  This ongoing harm to Amtrak's operations and reputation is not calculable and cannot be adequately compensated by monetary damages.  Moreover, without an injunction to preserve the status quo, the arbitration that the parties contemplated for disputes like this one will be rendered meaningless.  The arbitration process under the Agreements can take thirty days or more to constitute a panel.  By that time, the harm to Amtrak's operations and reputation will have compounded substantially.

22.     *Balance of Hardships.*   The balance of hardships tips decidedly in Amtrak's favor.  If the injunction is denied, Amtrak faces escalating speed restrictions, canceled trains, an inability to commission new trainsets, and significant reputational harm to its intercity passenger service.  If the injunction is granted, Metro-North would simply be required to continue approving Amtrak's non-revenue train movements on the same terms it followed without objection for more than thirty years.

8

23. *Public Interest.* The public interest favors granting the requested relief. The public has a direct interest in the reliable and timely operation of Amtrak's intercity passenger service, including Amtrak's ability to conduct FRA-required track inspections and to commission new trainsets. Moreover, ensuring that valid contracts are enforced in accordance with their terms, and that arbitration agreements are given their intended effect, serves the public interest.

## E.     *No Bond is Required*

24. Amtrak should not be required to post a bond pursuant to Fed. R. Civ. P. 65(c) because the preliminary injunction Amtrak seeks would merely require Metro-North to resume complying with its obligation under the Agreements to permit Amtrak's non-revenue movements unless it has a legitimate financial, operational, or safety-related reason for denying such movements. Metro-North permitted all of Amtrak's requested non-revenue movements with very little exception for more than three decades until it began pretextually denying the movements last month. Metro-North would not suffer any actual harm if a bond is not posted while the arbitration procedures in the Agreements play out.

9

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that this Court:

1.      Issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Respondent from denying, refusing, or failing to timely approve Amtrak's requests for non-revenue train movements on Metro-North's New Haven Line and Hudson Line, including, but not limited to, track geometry car runs, commissioning runs for next-generation Acela trainsets, repositioning of passenger equipment, and other non-revenue movements, except where Metro-North's physical and financial capabilities; speed, weight or similar operating restrictions; or rules and safety standards require Metro-North to schedule the non-revenue train movement at a later date or time, during the pendency of the arbitration, or at minimum until the arbitral tribunal is constituted and able to award interim relief; and

2.      Award Petitioner such other and further relief as this Court deems just and proper.

Dated:  April 22, 2026

Respectfully submitted,

/s/ Elizabeth A. Edmondson
Elizabeth A. Edmondson

Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036-2711
(212) 891-1606
eedmondson@jenner.com

Jessica Ring Amunson*
Jenner & Block LLP
1099 New York Ave NW, Suite 900
Washington, DC 20001-4412
(202) 639-6023
jamunson@jenner.com

*pro hac vice application forthcoming

Counsel for Amtrak