# EXHIBIT A

001221

AGREEMENT BETWEEN

METRO-NORTH COMMUTER RAILROAD

AND

NATIONAL RAILROAD PASSENGER CORPORATION

DATED: January 1, 1990

TABLE OF CONTENTS

PAGE

RECITALS

ARTICLE I

(RESERVED)

ARTICLE II

(RESERVED)

ARTICLE III

THE SERVICES

Section 3.1   Right to Services                           2

Section 3.2   Modification of the Services               2

Section 3.3   Standards of Performance                   3

Section 3.4   Control of Operations                      4

Section 3.5   No Violation of Labor Agreements           4

Section 3.6   Termination of the Services                4

Section 3.7   Performance by Other Than Railroad         5

Section 3.8   Ancillary Facilities                       6

ARTICLE IV

RAIL LINES

Section 4.1   Rail Lines                                 6

Section 4.2   Maintenance of Rail Lines                  6

Section 4.3   Additional Maintenance and Improvements    7

- i -

PAGE

ARTICLE V

ACCOUNTS AND PAYMENTS

Section 5.1    Basis of Payment                              9

Section 5.2    Billing and Payment                          13

ARTICLE VI

ARBITRATION                                                 17

ARTICLE VII

GENERAL

Section 7.1    (Reserved)                                    18

Section 7.2    Risk of Liability                            18

Section 7.3    Information                                   21

Section 7.4    NRPC Operations Officer                      21

- ii -

<u>ARTICLE VIII</u>

<u>MISCELLANEOUS</u>

Section 8.1    Force Majeure                         23

Section 8.2    Successors and Assigns               23

Section 8.3    Interpretation                       24

Section 8.4    Severability                         24

Section 8.5    Notices                              25

Section 8.6    Counterparts                         25

Section 8.7    Relationship of Parties              26

Section 8.8    Term                                 26

Section 8.9    Equal Employment Opportunity         26


APPENDIX I        Initial Track Speeds

APPENDIX II       (Reserved)

APPENDIX III      Current Cost Summary

APPENDIX IV       Cost Detail

APPENDIX V        Performance Payments and Penalties

-1-

THIS Agreement is between National Railroad Passenger Corporation, a corporation organized under the Rail Passenger Service Act (the Act), and the laws of the District of Columbia, having offices at 60 Massachusetts Avenue, N.E., Washington, D.C.  20002 (hereafter referred to as "NRPC" or "Amtrak"), and Metro-North Commuter Railroad, a public benefit corporation of the State of New York and subsidiary of Metropolitan Transportation Authority, having a place of business at 347 Madison Avenue, New York, N.Y.  10017, (hereafter referred to as "Railroad");

WHEREAS, Railroad controls and operates a railroad between Grand Central Terminal, N.Y. (MP 0.0) and Poughkeepsie, N.Y. (MP 75.8), which line shall hereafter be referred to as "the Hudson Line";

WHEREAS, Amtrak operates intercity passenger trains over the Hudson Line pursuant to the Interstate Commerce Commission Decision contained in Finance Docket No. 30426, as modified by letter agreement between the parties dated October 20, 1986;

NOW THEREFORE, effective January 1, 1990, the parties agree as follows:

ARTICLE III

THE SERVICES

Section 3.1  Right to Services.

Subject to and in accordance with the terms and conditions of this Agreement, Railroad hereby agrees to provide NRPC with the use of facilities and the services requested by NRPC for or in connection with the operation of Amtrak's trains over the Hudson Line.

-2-

Section 3.2  Modification of The Services.

NRPC shall have the right from time to time to request, and (subject to and in accordance with the terms and conditions of this Agreement including Section 3.3) Railroad hereby agrees to provide modified or additional services in connection with the operation of Amtrak trains on the Hudson Line.  Such modified or additional services shall be provided by Railroad upon the filing by NRPC of a request on a date sufficiently in advance of the date upon which any such request is to be implemented to permit adequate joint planning and joint preparation for the modified services provided for in such request. The services requested in any such request shall be subject to the physical and financial capabilities of Railroad and shall give due regard to Railroad's speed, weight and similar operating restrictions and rules and safety standards and to the avoidance of unreasonable interference with the adequacy, safety, and efficiency of its other railroad operations.  In applying the foregoing, recognition shall be given to the importance of fast and convenient schedules and passenger comfort and convenience to the success of NRPC's Intercity Rail Passenger Service.

Section 3.3  Standards of Performance.

A.  Railroad further agrees to provide and furnish all labor, materials, equipment and facilities necessary to perform the services to be provided under Sections 3.1 and 3.2 (except as the same are provided by NRPC), but shall not, except as otherwise provided in this Agreement or upon agreement with NRPC, be required to purchase, construct, rebuild or replace the Hudson Line or ancillary facilities.

-3-

B.  Railroad shall provide services hereunder in an economic and efficient manner and shall make every reasonable effort:

1.  To deliver Amtrak trains to all scheduled passenger stops on Railroad by the scheduled time therefor;

2.  To avoid excessive delays to trains and, consistent with safety, to make up delays incurred on the Hudson Line or on rail lines of other railroads and;

3.  To perform emergency mechanical service or repairs when necessary to permit an Amtrak locomotive or a passenger car in the consist of an Amtrak train to complete a trip over the Hudson Line.

C.  Railroad shall cooperate in good faith with NRPC in providing service which will contribute to the success of NRPC's Intercity Rail Passenger Service.

D.  Railroad shall have no obligation to maintain locomotives or cars except as provided in paragraph B.3 above.


Section 3.4   Control of Operations.

In the performance of services referred to in this Agreement, Railroad shall have sole control of the operation of NRPC's Intercity Rail Passenger Trains while on the Hudson Line.


Section 3.5   No Violation of Labor Agreements.

NRPC agrees that it will not require the performance of services hereunder by Railroad, nor will it exercise its rights under Section 3.7, in a manner which would cause Railroad to violate the terms of or incur penalties, unless reimbursed by NRPC, in connection with any then current labor agreements between Railroad and any organization representing any of its employees.

-4-

## Section 3.6   Termination of The Service.

NRPC shall have the right to terminate provision of any or all services by Railroad on not less than thirty (30) days' prior written notice to Railroad, but exercise of such right shall not limit NRPC's future exercise of its rights thereafter pursuant to Sections 3.1 and 3.2.

## Section 3.7   Performance by Other Than Railroad.

All personnel rendering any services which involve responsibility for Railroad's operating facilities or for the handling or movement of any Intercity Rail Passenger Train shall be subject to the direction, supervision and control of Railroad, and such services performed by or for NRPC shall be governed by and subject to all then current operating and safety rules, orders, procedures and standards of Railroad with respect thereto.

Railroad may, for cause, require that any person performing services under this Section be prohibited or removed from performance of such services, subject to the requirement that Railroad shall support any action defending such prohibition or removal and bear any claims growing out of any improper prohibition or removal.

## ARTICLE IV

## RAIL LINES

## Section 4.1   Rail Lines.

Railroad shall retain and not dispose of or abandon its rights in the Hudson Line used in the operation of NRPC trains for as long as

-5-

such use continues, or for the term of this Agreement, whichever period is the shorter, provided that seasonal changes or suspensions or service shall not be deemed discontinuance of use.  Nothing herein shall prevent Railroad from modifying, changing, or relocating any facility or any segment of its tracks, provided that with respect to tracks covered by this paragraph, the continuity of the tracks is retained.

The Hudson Line shall include Railroad's rights of way and real properties appurtenant thereto necessary to operate NRPC's Intercity Rail Passenger Service and all of its rights to use such properties of others, together with the roadway structures thereof or appurtenant thereto used in connection with the actual operation of NRPC trains.

Section 4.2  Maintenance of Rail Lines.

The Hudson Line shall be maintained by Railroad at not less than the level of utility existing on January 1, 1990.  Railroad also agrees to maintain the Hudson Line for the the operation of NRPC trains at no less than those speeds shown in Appendix I of this Agreement.

Section 4.3  Additional Maintenance and Improvements.

Upon the request of NRPC, Railroad shall as promptly as feasible modify the Hudson Line maintenance, at the sole expense of NRPC for any additional cost to the extent such additional costs is not reimbursed under Appendix IV, so as to increase the level of utility of any part of the Hudson Line to the level specified in such request.

NRPC shall have the right (i) at its sole expense, to the extent that the cost thereof is not reimbursed under Appendix IV, to require Railroad to improve the Hudson Line as provided in such request, or

-6-

(ii) subject to mutually satisfactory arrangements, to improve the Hudson Line; provided that any such improvement shall not unduly interfere with or unduly limit Railroad's other rail operations, that any such requested improvement shall be made by Railroad as promptly as feasible, and that any increase in maintenance cost occasioned by such improvement shall be paid by NRPC to the extent that such increased cost is not reimbursed under Appendix IV.

## ARTICLE V

### ACCOUNTS AND PAYMENTS

Section 5.1  Basis of Payment.

As full and complete compensation for the services and activities performed and the facilities and equipment made available to NRPC under this Agreement, and for Railroad's provision of management and corporate resources necessary to enable Railroad to provide the services, activities, and facilities specified in an efficient manner, NRPC will pay Railroad amounts set forth or calculated in accordance with Subsections A, B, and C, below, and other adjustments provided in Subsection D, below.

Authorization Notice.

For work and/or services performed under NRPC's Authorization Notice Procedure which may include certain items in Appendix IV, when requested, NRPC shall pay Railroad the incremental cost (including fringe benefits), plus overheads (exclusive of profit) for capital work to the extent such additional cost is not reimbursed under Appendix IV.

A.  Initial Service.

With respect to the operation of Amtrak trains by Railroad

-7-

hereunder, and the services initially provided by Railroad in connection therewith, NRPC shall pay Railroad the amounts specified in Appendix IV.

B.  Modified or Additional Service.

With respect to any modified or additional services requested by NRPC to be provided by Railroad pursuant to Section 3.2, in connection with the filing of a request for such modified or additional service, NRPC will specify proposed payments corresponding to those in Subsection A of this Section 5.1 for such service.  Such proposed payments shall be calculated using the methodology employed in calculating the costs in Appendix IV and shall be designed to provide Railroad with payment as nearly as possible on the same basis as for comparable services being rendered at that time, taking into account, however, any relevant differences.

In the event Railroad considers that the method of payment proposed by NRPC pursuant to this subsection differs in any significant degree from the basis of payment used for the initial service operated by Railroad as provided in Subsection A, at the request of either party, the matter shall be submitted to arbitration for an order prescribing the payment to be made for the modified services on the same basis as payments were established pursuant to Subsection A.  Such order shall be effective on the date agreed by the parties or (in the absence of such agreement) on the date set by the arbitrators.  During the pendency of any such proceeding, Railroad shall provide the services requested by NRPC under the terms of this Agreement and NRPC shall pay Railroad the amount proposed by NRPC or an interim amount set by the arbitrators.  The parties agree to adjust any interim payments to the final compensation determination as established by the arbitrators.

-8-

C.  Performance Payments.

In addition to the reimbursement paid to Railroad under this section Railroad may earn additional payments for schedule adherence as set forth in Appendix V.  With respect to any modified or additional services requested by NRPC to be provided by Railroad pursuant to Section 3.2, NRPC shall, in connection with filing of a request for such modified service, specify proposed performance standards and payments consistent with those in Appendix V in connection with the operation of such service.

D.  Payment Adjustment.

The amount of payments stated to be payable by NRPC under Subsection A of this Section 5.1, and the amounts which become effective for payment under Subsection B of this Section 5.1, shall be subject to further adjustments as follows:

1.  For the purpose of keeping the cost provisions current with the Railroad's labor, fringe benefit, and material costs, the fixed payments specified in Appendix IV shall be adjusted in accordance with the provisions set forth in Appendix III, Table 1.

2.  The basis or the amounts of payment shall be appropriately adjusted whenever:

(a)  Railroad ceases or fails to commence performing any service or activity;

(b)  The provision of any service, activity, or facility hereunder, are changed in accordance with this Agreement.

3.  NRPC may notify Railroad that it no longer desires Railroad to perform or furnish any service, activity, or facility for which NRPC compensates Railroad, and Railroad shall cease to perform or provide the same on the date requested, which shall be at least thirty (30) days after receipt of writing notice unless otherwise agreed.  Such

-9-

notice shall include a schedule of the services, activities, or facilities to be terminated, and upon the date requested for termination of performance, NRPC shall no longer be required to make payment to Railroad with respect thereto.  NRPC agrees, however, to reimburse Railroad the avoidable costs specified in Appendix IV or the cost of removing facilities installed at NRPC's request which are incurred as a consequence of Railroad's termination of such services, activities, or facilities, irrespective of the date incurred.  With respect to removal of facilities, such removal must be necessary and reasonable.  This paragraph D.3 shall have no effect on the application of Section 402(a) of the Rail Passenger Service Act.

4.  If NRPC and Railroad are unable to resolve any dispute regarding the amount of any change in the basis of payment which may be made pursuant to paragraphs 1 through 3 of this Subsection D, either party may submit the matter to arbitration pursuant to Article VI for an order prescribing the basis of payment consistent with such paragraphs.  Such order shall be effective on the date agreed by the parties or (in the absence of such agreement) upon the date set by the arbitrators.  During the pendency of any such proceedings, Railroad shall provide the services requested by NRPC under the terms of this Agreement and NRPC shall pay Railroad the amount due for services provided by Railroad pursuant to the terms of this Agreement and not requested to be terminated in accordance with paragraph 3, above, or shall for additional services requested, pay the amount proposed by NRPC or an interim amount set by the Panel.  The parties agree to adjust any interim payments to the final compensation determination as established by the arbitrators.

-10-

E. __Redetermination of Compensation.__

The foregoing shall be the basis for compensation for the services and activities performed and the facilities and equipment provided to NRPC by Railroad hereunder from the date of the Agreement until the parties have reached a new agreement with respect to compensation or until the Interstate Commerce Commission has issued any order pursuant to a joint application of the parties as hereinafter provided. At any time three (3) years after the effective date of this Agreement, NRPC or Railroad may notify the other that it wishes to negotiate as to a redetermination of the amount of method of computing the amount of payment for any service or activity preformed or provided by Railroad hereunder. In such event, the other party shall promptly negotiate with respect to such a redetermination.

If, within 180 days after the date of such notice, NRPC and Railroad are unable to agree as to a new basis of compensation, NRPC and Railroad shall, at the request of either, jointly make application to the Commission under Section 402(a) of the Act for an order fixing just and reasonable compensation. Until a new basis of compensation is established, NRPC shall continue to make periodic payments to Railroad in the manner and amount provided in this Agreement, provided, however, that for any period after the issuance of an initial service order pursuant to the filing of a joint application hereunder, compensation shall be that which is established by the Commission.

Section 5.2  __Billing and Payment.__

A. Within thirty (30) days after the last day of each calendar month, Railroad shall submit a Statement of Charges to NRPC calculated for such month in accordance with the provisions of Section 5.1. The Statement of Charges shall be submitted in a form to be mutually agreed

-11-

upon.  If any revisions in the forms and methods of billing significantly change the amount of work required by Railroad in connection with billing NRPC, the parties will negotiate a new basis of compensation for such activity.

Within fifteen (15) days after receipt of such Statement, NRPC shall pay Railroad the amount due Railroad in accordance with Section 5.1.  Billing disputes shall be resolved in accordance with Subsection D below.

NRPC shall mail its payment checks (or at the Railroad's election make wire transfer payment or checks available at the Controller's office of NRPC for Railroad's authorized agent) to Railroad on or before the fifteenth (15) day after receipt of the aforementioned Statement.

B.  Any payment by NRPC shall be subject to an audit and evaluation of operations, performance, and costs.  The scope of such audit and evaluation shall be both financial and operational, and may include, in addition to costs and wages reimbursed by NRPC, Railroad's controls, practices, and procedures and their effect upon the efficiency and quality of performance provided by Railroad.  Except as provided in Subsections 5.1 D and E and Subsection 5.2 E, no flat-rated item shall be subject to adjustment as a result of such audit and evaluation.

C.  Railroad shall maintain supporting accounting, operating, and mechanical department records and any other related data which may be required, and such supporting documents shall be available for NRPC review and audit at points where such records are ordinarily kept by Railroad.  All such records shall include the NRPC designated locomotive number, and shall be maintained and accumulated on a location-by-location basis.  Such records shall be retained not less

-12-

than 36 months and shall be available to NRPC during the regular business hours of the location where the record is retained.

D.  In the event either party believes it has made a payment which exceeds (or has received a payment which is less than) the amount required by the provisions of the Agreement or a settlement between the parties of a matter covered by this Agreement, such party shall formally submit its claim in reasonable detail to the other party. Undisputed audit adjustments shall be paid promptly by the other party. In the event that a party disagrees with the proposed audit adjustment, such party shall provide a written statement of the theory of its disagreement and the facts supporting that theory in a form which will permit the claiming party to evaluate the merits of the other party's position.  Any adjustment which is unresolved 90 days after having been formally presented shall, at the request of either party, be submitted to arbitration for resolution.  If it is established by agreement or arbitration more than 90 days after a claim is initially submitted to a party that an overpayment or underpayment has occurred, the amount of such excess or shortfall shall bear monthly compound interest at the Chase Manhattan prime rate from the date (or dates) on which it was originally paid or should have been paid until the date the appropriate adjustment is made.

E.  If the amount of compensation specified in Appendix IV for a flat rated item varies clearly and substantially from the actual costs incurred by Railroad in connection with such item, and if the flat rate is inaccurate because of the existence of a material mistake of fact, the compensation with respect to such item shall be changed prospectively from the date notice is given of the discovery in order that it will reasonably reflect the avoidable costs incurred by Railroad which are covered by that item.  For purposes of this

-13-

provision, a material mistake of fact has occurred where there has been significant factual understanding which was incorrect and (1) was relied upon by both parties without knowledge of its error, or (2) was relied upon by one party, where that party could not reasonably have known that it was incorrect, while the other party either knew it was incorrect or failed to take reasonable steps to determine its accuracy. For purpose of this provision, a variance between actual, avoidable costs and the agreed upon flat rate amount for that item which is less than 20% (unless such variance exceeds $25,000 per year for the item) will normally be deemed not to be substantial.

## ARTICLE VI

### ARBITRATION

The parties agree to make a good faith effort to resolve any dispute, claim, or controversy between them relating to the interpretation, application, or implementation or this Agreement. Any such dispute, claim, or controversy that cannot be resolved by agreement shall be submitted to binding arbitration in the following manner:

(a)  The party wishing to initiate arbitration shall notify the other in writing of its desire to submit the matter to arbitration. Such notice shall contain a statement of the issues and shall designate one arbitrator.

(b)  Within fifteen (15) days of such notice, the other party shall respond in writing by designating a second arbitrator.

-14-

(c)  Within fifteen (15) days of designation of the second arbitrator, the two arbitrators designated as aforesaid shall appoint a third arbitrator to serve as chairman except that if a second arbitrator has not been designated as provided in clause (b), no arbitrator other than the first one named need be designated.  If the two arbitrators so designated fail to appoint a third arbitrator within the time provided herein, the initiating party may request the Chief Judge of the United States District Court for the district in which the said party's principal office is located to appoint a third arbitrator.

(d)  The arbitrators shall promptly hear and decide the issues submitted to them, giving each party reasonable notice of the time and place of hearing.

(e)  The arbitrators, or a majority of them, shall promptly render their decision and award in writing to the parties.

(f)  Any arbitration award rendered hereunder shall be final and binding upon the parties.  Judgment upon any such arbitration award may be entered in any court having jurisdiction over the parties.

(g)  Each party shall bear its own costs and expenses of arbitration, including the cost and any expenses of the arbitrator designated by it.  The fees of the chairman and any other remaining expenses shall be borne equally by the parties, except that the arbitrators may impose a greater proportion or all of such fees and expenses upon one of the parties if it is determined that such party has unreasonably delayed the arbitration process or taken a position which is totally lacking in merit as to one or more of the issues.

-15-

ARTICLE VII

GENERAL

Section 7.1   (Reserved).

Section 7.2   Risk of Liability.

(a)  NRPC agrees to indemnify and save harmless Railroad, irrespective of any negligence or fault or Railroad, its employees, agents or servants, or howsoever the same shall occur or be caused, from any and all liability for injuries to or death of any employee of NRPC (including employees of Amtrak contractors) and for loss of, damage to, or destruction to his property; but is is expressly understood and agreed that labor furnished by Railroad for an on behalf of NRPC and for which Railroad bills NRPC shall not be regarded for purposes of this Section 7.2(a) as employees of NRPC.

(b)  NRPC agrees to indemnify and save harmless Railroad, irrespective of any negligence or fault of Railroad, its employees, agents or servants, or howsoever the same occur or be caused, from any and all liability for injuries to or death of any person or passenger who has purchased or obtained a NRPC-approved ticket for any train operated by or for the account of NRPC and for loss of, damage to or destruction of property of such person or passenger and for injuries to or death of any other person who may be on, getting on, or alighting from such train for the purpose of accompanying or meeting a passenger, and for loss of, damage to or destruction of the property of such person.

(c)  NRPC agrees to indemnify and save harmless Railroad, irrespective of any negligence of fault of Railroad, its employees, agents or servants, or howsoever the same shall occur or be caused,

-16-

from any and all liability for, loss of, damage to or destruction of any locomotive, passenger car or any other property or equipment owned by , leased to, used by or otherwise in control, custody or possession of NRPC.

(d)  NRPC agrees to indemnify and save harmless Railroad, irrespective of any negligence of fault of Railroad, its employees, agents and servants of howsoever the same shall occur or be caused, and notwithstanding the provisions of Section 7.2(f) hereof, from any and all liability for injury to or death of any person and for loss of, damage to, or destruction of any property, other than property specified in Section 7.2(e) hereof, if such injury, death, loss, damage, or destruction arises from or is proximately caused as a result of a collision of a vehicle or a person with an NRPC train at the intersection of a street or road, whether public or private, and the tracks of Railroad.

(e)  Railroad agrees to indemnify and save harmless NRPC, irrespective of any negligence or fault of NRPC, its agents, employees or servants, or howsoever the same shall occur or be caused, from any and all liability for injury to or death of any employee or employees of Railroad and for loss of, damage to or destruction of any property or equipment owned by, leased to, used by, or otherwise in control, custody, or possession of Railroad or its employees, other than property described in Section 7.2(c) hereof, which arises from activities conducted by or for the account of NRPC pursuant to this Agreement.  In consideration of Railroad assuming the obligation described in this Section, NRPC will compensate Railroad at the rate of 7.34 cents per passenger train mile ("passenger train mile" means a passenger train operated over Railroad for the account of NRPC for one mile).

(f)  Railroad agrees to indemnify and save harmless NRPC, irrespective of any negligence of fault of NRPC, its employees, agents or servants, or howsoever the same shall occur or be caused, from any and all liability for injury to or death of any person or persons (other than those persons, employees or passengers described in Section 7.2(a), 7.2(b), 7.2(d) and 7.2(h) hereof) and from any and all liability for loss, damage or destruction to any property (other than property described in Section 7.2(a), 7.2(b), 7.2(c), and 7.2(d) hereof) which arises from activities conducted by and for the account of NRPC.

(g)  In case suit shall at any time be brought against either NRPC or Railroad asserting a liability against which the other agrees to indemnify and save harmless the party sued, the indemnifying party shall, at its own cost and expense and without any cost or expense whatever to the party sued, defend such suit and indemnify and save harmless the party sued against all costs and expenses thereof and promptly pay or cause to be paid any final judgement recovered against the party sued; provided, however, that the party sued shall promptly upon the bringing of any such suit against it give notice to the indemnifying party and thereafter provide all such information as may from time to time be requested.  Each party shall furnish to the other all such information relating to claims made for injuries, deaths, losses, damage or destruction of the type covered by this Section 7.2 as such other party may from time to time request.

(h)  Notwithstanding the provisions of Subsection (f) hereof, NRPC agrees to indemnify and save harmless Railroad irrespective of any negligence or fault of Railroad, its employees, agents or servants, or howsoever the same shall occur or be caused, from any and all liability for injuries to or death of any person, other than an employee or

-18-

passenger of Railroad or an employee of another railroad (including the Consolidated Rail Corporation) that is operating on the Hudson Line pursuant to an agreement with Railroad, as a consequence of being hit by an NRPC train on the Hudson Line.

(i)  On or after January 1, 1993, either NRPC or Railroad may request the other party to renegotiate in its entirety this Section 7.2.  If within 180 days after a request for renegotiation is made, the parties are unable to agree with respect to any proposed change in said Section 7.2, then the parties shall at the request of either party submit the matter to the Commission for resolution pursuant to Section 402(a) of the Act.  The parties shall make all reasonable efforts to expedite such proceedings.  During the period of negotiations or while the matter is pending before the Commission the method of handling such liability pursuant to said Section 7.2 shall remain in effect.

Section 7.3  Information.

Either party hereto shall have the right to inspect the books and records of the other party pertaining to the performance of this Agreement at its usual place of business, on reasonable notice, and during regular business hours.

At any reasonable time NRPC or its designated agents shall have the right upon reasonable conditions and notice to examine the tracks in performing Intercity Rail Passenger Service for NRPC.  Railroad shall furnish, when reasonably requested by NRPC, reports to NRPC pertaining to the level of utility of the tracks of the Railroad for rail passenger transportation use, which reports shall set forth the speed and load capacity of each line segment of the tracks, the condition and capacity of stations and terminals (including any contractual limitations governing Railroad's use of such stations and

-19-

terminals), the availability and capacity of maintenance facilities, and current maintenance procedures.

Section 7.4   NRPC Operations Officer.

Railroad shall appoint an individual of appropriate rank to NRPC Operations Officer and shall so notify NRPC.  The NRPC Operations Officer shall have the responsibility for the performance by Railroad of its obligations under this Agreement.  The NRPC Operations Officer shall report directly either to the Chief Executive or Chief Operating Officer of Railroad.

ARTICLE VIII

MISCELLANEOUS

Section 8.1   Force Majeure.

The obligations of the parties hereunder shall be subject to force majeure (which shall include strikes, riots, floods, accidents, Acts of God, and other causes or circumstances beyond the control of the party claiming such force majeure as an excuse for nonperformance), but only as long as, and to the extent that, such force majeure shall prevent performance of such obligations.

Section 8.2   Successors and Assigns.

All the covenants and obligations of the parties hereunder shall bind their successors and assigns whether or not expressly assumed by such successors and assigns.

-20-

Section 8.3    Interpretation.

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof. All Appendices attached hereto are integral parts of this Agreement and the provisions set forth in the Appendices shall bind the parties hereto to the same extent as if such provisions had been set forth in their entirety in the main body of this Agreement. Nothing expressed or implied herein shall give or be construed to give to any person, firm or corporation other than NRPC or Railroad any legal or equitable right, remedy or claim under or in respect of this Agreement. Neither this Agreement nor any of the terms hereof may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing signed by NRPC and Railroad unless a provision hereof expressly permits either of said parties to effect termination, amendment, supplementation, waiver or modification hereunder, if which event such action shall be taken in accordance with the terms of such provision.

Section 8.4    Severability.

If any part of this Agreement is determined to be invalid, illegal or unenforceable, such determination shall not affect the validity, legality, or enforceability of any other part of this Agreement, and the remaining parts of this Agreement shall be enforced as if such invalid, illegal, or unenforceable part were not contained herein.

Section 8.5    Notices.

Any request, demand, authorization, direction, notice, consent, waiver, or other document provided for or permitted by this Agreement to be made upon, given or furnished to, or filed with one party by the other party, shall be in writing and shall be delivered by hand or by

-21-

deposit in the mails of the United States postage prepaid, if to NRPC, in an envelope addressed as follows:

National Railroad Passenger Corporation
60 Massachusetts Avenue, N.E.
Washington, D.C.    20002

Attention:  Director, Contract Administration

and if to Railroad, in an envelope addressed to the attention of Railroad's NRPC Operations Officer, as follows:

Metro North Commuter Railroad
347 Madison Avenue
New York, NY    10017

Each party may change the address at which it shall receive notification hereunder by notifying the other of such change.

Section 8.6   Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be an original.

Section 8.7   Relationship of Parties.

In rendering any service or in furnishing any equipment, materials or supplies hereunder, Railroad is acting solely pursuant to this Agreement with NRPC made pursuant to the Act and not in its capacity as a common carrier by Railroad.

Section 8.8   Term.

This Agreement shall become effective January 1, 1990, and shall remain in effect at least through December 31, 1999.  This Agreement shall remain in effect after December 31, 1999, until it is terminated by 12 months written notice by either party to the other.  Such notice

-22-

may be given at any time after December 31, 1998.

Compensation for NRPC's operation on the Hudson Line for the period January 1, 1983 through December 31, 1989 shall be consistent with the compensation terms set forth in this Agreement (including appropriate adjustments for price level changes); provided, however, that there shall be no adjustment or retroactive application to that period with respect to the provisions governing performance payments and penalties, and that the provisions governing risk of liability (and compensation therefor) shall only apply retroactive to January 1, 1986. Appropriate adjustments to the accounts shall be made by July 1, 1990.

Section 8.9  Equal Employment Opportunity.

Railroad shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.  Railroad will take affirmative action to insure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin.  Such action shall include, but not be limited to, the following:  employment, upgrading, demotion, or transfer, recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

-23-

IN WITNESS WHEREOF, NRPC and Railroad have caused this Agreement to be duly executed by their respective officers thereunto duly authorized, all as of the day and year first above written.


NATIONAL RAILROAD PASSENGER CORPORATION

By _____


METRO-NORTH COMMUTER RAILROAD

By _____

Peter E. Stangl

President

## APPENDIX I

## MAXIMUM PASSENGER

## TRAIN SPEEDS

Pursuant to Section 4.2 of this Agreement, Railroad and NRPC agree the Rail Lines will be maintained to permit operations at the following speeds:

### SPEEDS, PASSENGER TRAINS AND FREIGHT TRAINS
### Maximum Speeds, Unless Otherwise Specified

| HUDSON LINE | No 4 Track Psgr | No 4 Track Frt | No 2 Track Psgr | No 2 Track Frt | No 1 Track Psgr | No 1 Track Frt | No 3 Track Psgr | No 3 Track Frt | Other Track Psgr | Other Track Frt |
|---|---|---|---|---|---|---|---|---|---|---|
| **Between** | | | | | Miles Per Hour | | | | | |
| G.C.T. and U (MP 0.9) | | | | | | | | | 10 | 10 |
| U (MP 0.9) and Nick (MP 3.4) | 35 | 20 | 35 | 20 | 35 | 20 | 35 | 20 | | |
| Nick (MP 3.4) and MP 4 5 | 40 | 20 | 40 | 20 | 40 | 20 | 40 | 20 | | |
| MP 4.5 and MO (MP 6.1) | 35 | 20 | 35 | 20 | 35 | 20 | 35 | 20 | | |
| MO Int. (MP 6.1) and CP 10 (MP 9.9) | 60 | 40 | 60 | 40 | 60 | 40 | | | | |
| CP 10 (MP 9.9) and CP 11 (MP 11.1) | | | 30 | 20 | 30 | 20 | | | | |
| CP 11 (MP 11 1) and CP 12 (MP 11.5) | 30 | 20 | 30 | 20 | 30 | 20 | | | | |
| CP 12 (MP 11.5) and CP 25 (MP 24.5) | 75 | 40 | 75 | 40 | 75 | 40 | 75 | 40 | | |
| CP 25 (MP 24.5) and MP 26.3 | 50 | 40 | 70 | 40 | 70 | 40 | 70 | 40 | | |
| MP 26.3 and MP 31 0 | 70 | 40 | 70 | 40 | 70 | 40 | 70 | 40 | | |
| MP 31 0 and MP 33 0 | 75 | 40 | 75 | 40 | 75 | 40 | 75 | 40 | | |
| MP 33.0 and MP 34.7 | 35 | 25 | 35 | 25 | 35 | 25 | 35 | 25 | | |
| MP 34.7 and MP 35.7 | 60 | 40 | 80 | 45 | 80 | 45 | | | | |
| MP 35.7 and MP 40.8 | 60 | 40 | 80 | 50 | 80 | 50 | | | | |
| MP 40.8 and MP 45.3 | | | 60 | 40 | 60 | 40 | | | | |
| MP 45.3 and MP 51.7 | | | 80 | 50 | 80 | 50 | | | | |
| MP 51.7 and MP 58 4 | | | 95 | 50 | 95 | 50 | | | | |
| MP 58.4 and MP 71 9 | | | 90 | 50 | 90 | 50 | | | | |
| MP 71.9 and mP 74 1 | | | 70 | 50 | 70 | 50 | | | | |
| MP 74.1 and MP 75.8 | | | 90 | 50 | 90 | 50 | | | | |
| All Controlled Sidings | | | | | | | | | 30 | 25 |

### SPEED RESTRICTIONS—CURVES, BRIDGES, ETC.

| HUDSON LINE | No 4 Track Psgr | No 4 Track Frt | No 2 Track Psgr | No 2 Track Frt | No 1 Track Psgr | No 1 Track Frt | No 3 Track Psgr | No 3 Track Frt | Other Track Psgr | Other Track Frt |
|---|---|---|---|---|---|---|---|---|---|---|
| **Between** | | | | | Miles Per Hour | | | | | |
| MP 4 0 and MP 4.3 | 35 | 20 | | | | | 35 | 20 | | |
| First Curve North of MO, (MP 6.1-MP 6 4) | 35 | 35 | 35 | 35 | 35 | – | | | | |
| BN Curve (MP 9.2-MP 9.9) | 50 | 30 | 50 | 30 | 50 | 30 | | | | |
| First Curve South of Yonkers Station (MP 15.0-MP 15 3) | 50 | 40 | 50 | 40 | 50 | 40 | 50 | 40 | | |
| MP 16.2 and MP 16.6 3.6 | 70 | 40 | 70 | 40 | 70 | 40 | 60 | 25 | | |
| MP 32.0 and MP 33.0 | | 25 | | 25 | | 25 | | 25 | | |
| CP 33 Interlocking (MP 32.7-MP 33.0) | 50 | | 50 | | 50 | | | | | |
| MP 34.4 and MP 34.7 | 30 | 25 | 30 | 25 | 30 | 25 | 30 | 25 | | |
| MP 36.7 and MP 38.4 | 50 | 40 | 60 | 40 | 60 | 40 | | | | |
| MP 41.2 and MP 41.8 | | | 45 | 30 | 45 | 30 | | | | |
| MP 43.8 and mP 44.0 | | | 55 | 40 | 55 | 40 | | | | |
| MP 50.0 and MP 50.9 | | | 60 | 40 | 60 | 40 | | | | |
| MP 54.4 and MP 54.7 | | | 90 | 50 | | | | | | |
| MP 59.6 and MP 61.6 | | | 80 | 50 | 80 | 50 | | | | |
| MP 64.7 and MP 64.8 | | | 80 | 50 | 80 | 50 | | | | |
| MP 73.0 and MP 73.2 | | | | | 60 | 40 | | | | |

MN-APPS

APPENDIX II

(RESERVED)

MN-APPS

APPENDIX II

APPENDIX III

CURRENT COSTS AND COST CHANGES


Table 1 lists in summary form the authorized cost elements which comprise the monthly charges to NRPC from the Railroad under this Agreement.  Column 1 lists the reference to the item in Appendix IV where the contractual agreement governing the cost element is found. Column 2 describes the item.  Column 3 shows the latest Amendment Agreement Change number which affects the cost item.  Column 4 shows the current cost and describes the unit of measure for flat-rated items, or indicates that an item is to be compensated on an actual basis.  Column 5 shows the method to be used to adjust individual cost items in order to keep the cost provisions at current price levels.

Table 2 defines the different methods for adjusting fixed cost items that are identified in Table 1.

Appendix III shall constitute the authority for the Railroad to bill the amounts shown under Column 4 as of the date of the latest revision of this Appendix III.


MN-APPS

APPENDIX III

TABLE 1

CURRENT COST SUMMARY

| (1) Appendix IV Item No. | (2) Description | (3) Latest Update Refer. | (4) Current Amount | Unit of Cost | (5) Price Level Adjustment Method |
|---|---|---|---|---|---|
| 1 | Third Rail Power | Original | $.0050 | UNIT MI. | C |
| 2 | Emergency Mechanical Service and Repairs | Original | | ACTUAL | A |
| 3 | Incr. Track Maintenance | Original | $.1656 | UNIT MI. | B |
| 4 | Yard Switching - GCT | Original | $22,643 | MONTH | A |
| 5 | Yard Switching - Harmon | Original | $67.43 | PER OCCR. | A |
| 6 | Rubbish Removal - GCT | Original | $2,574 | MONTH | C |
| 7 | Electricity - GCT | Original | $7,489 | MONTH | C |
| 8 | Train Performance Clerk | Original | $4,971 | MONTH | A |
| 9 | Ticket Clerks | Original | $22,216 | MONTH (*) | A |
| 10 | Timetable Printing | Original | | ACTUAL | N/A |

(*)  This amount becomes effective April 1, 1990.  The amount effective for prior periods is $12,954.

MN-A3T1

APPENDIX III

Table 2

## PRICE LEVEL ADJUSTMENT METHODS

### Method A

When the rates of pay, actual fringe benefit costs, labor arbitraries, or allowances change, the amount of fixed payments to Railroad based upon these elements shall be adjusted to reflect such change; provided, however, that NRPC shall have previously approved all changes affecting only intercity passenger train crews or intercity passenger service personnel of Railroad or affecting such personnel differently than commuter personnel of Railroad.

The term "fringe benefits" refers to provisions for vacation pay, holiday pay, health and welfare benefits, funded pensions (excluding "past service costs" relating to Railroad operations prior to May 1, 1971), railroad unemployment, supplemental annuity, and railroad retirement taxes. Fringe benefits will be computed, where applicable, as a payroll additive to labor elements included in Appendix IV. The computation will be based upon actual fringe benefits for identifiable personnel and for all other personnel upon estimated system rates or, at the option of NRPC, upon estimated rates by craft of employees if such are reasonably obtainable. Fringe benefit rates shall not include supervision, administration, use of tools, or other overheads.

Where amounts shown for fringe benefits are estimates, an annual adjustment reflecting actual fringe benefit cost will be made for the overpayment (or underpayment) by NRPC to Railroad in the previous calendar year.

### Method B

Components to be adjusted using this method shall be adjusted annually for price level changes beginning January 1, 1991, based on the relationship of the most recent Third Quarter index from Association of American Railroads (AAR) Quarterly Indices of Chargeout Prices and Wage rates (Table C)-East "Material prices, wage rates and supplements combined (excluding fuel)", to comparable indices of the prior Third Quarter. The adjustment to be made on January 1, 1991 shall be based on the comparison of the Third Quarter 1990 index value to the 1989 Third Quarter index value. The index value as of the Third Quarter 1989 is 216.4.

## Method C

This method is the same as Method B except that the index used shall be the "Material prices, wage rates and supplements combined (including fuel)". The index value as of the Third Quarter 1989 is 210.2.

## Method D

This method is the same as Method B except that the index used shall be the "Material and Supplies)". The index value as of the Third Quarter 1989 is 147.5.

## Method E

This method is the same as Method B except that the index used shall be the "Wages Rates and Supplements)". The index value as of the Third Quarter 1989 is 231.2.

### Summary of Current Estimated Fringe Benefit Rates

| | |
|---|---|
| Yard switching - Grand Central Terminal | 48.33 % |
| Yard switching - Croton-Harmon | 48.33 % |
| Train Performance Clerk | 59.67 % |
| Ticket Clerks | 62.69 % |

MN-A3T2

<u>APPENDIX IV</u>

COST DETAIL

MN-APPS

APPENDIX IV

COST DETAIL

Item 1   Third Rail Power

NRPC shall pay Railroad $.0050 per each locomotive mile and car mile for the cost of third rail power utilized to propel NRPC trains into and out of Grand Central Terminal.

Item 2   Emergency Mechanical Service and Repairs

NRPC shall reimburse Railroad the actual cost incurred (including fringe benefits) when Railroad employees are utilized to perform emergency mechanical service or repairs.

Item 3 Incremental Track Maintenance

As payment for the incremental cost of maintaining Rail Lines of Railroad in connection with the operation of NRPC passenger service, NRPC shall pay Railroad $.1656 per each locomotive mile and car mile for trains operated between Grand Central Terminal and Poughkeepsie, NY.

Item 4   Yard Switching - Grand Central Terminal

NRPC shall pay Railroad the amounts per month as detailed below for the cost of switching NRPC passenger equipment at Grand Central Terminal.

| Wages Per Mo. | Fringe Benefits | Total Per Mo. |
|---|---|---|
| $15,265 | $7,378 | $22,643 |

MN-A-IV

## Item 5  Yard Switching - Croton-Harmon

NRPC shall pay Railroad the amount per occurrence as detailed below for the cost of switching NRPC passenger equipment at Croton-Harmon.

| Wages Per Occ. | Fringe Benefits | Total Per Occurence |
|---|---|---|
| $45.46 | $21.97 | $67.43 |

## Item 6  Rubbish Removal - Grand Central Terminal

NRPC shall pay Railroad $2,574 per month for the cost to remove rubbish generated by NRPC's operation at Grand Central Terminal.

## Item 7  Electricity - Grand Central Terminal

NRPC shall pay Railroad $7,489 per month for the cost of electricity utilized by NRPC's operation at Grand Central Terminal.

## Item 8 Train Performance Clerk

NRPC shall pay Railroad the amount per month, as detailed below, for the cost of a clerk to compile train performance data for NRPC trains.

| Wages Per Mo. | Fringe Benefits | Total Per Mo. |
|---|---|---|
| $3,113 | $1,858 | $4,971 |

MN-A-IV

## Item 9 Ticket Clerks

NRPC shall pay the amount per month as detailed below for the cost of additional ticket clerks required for NRPC operations.

| Location | Positions | Wages | Fringe Benefits | Total Per Month |
|----------|-----------|-------|-----------------|-----------------|
| Poughkeepsie | 1.4 | $3,981 | $2,496 | $6,477 |
| Harmon | 1.4 | $3,981 | $2,496 | $6,477 |
| Yonkers (*) | 2.0 | $5,693 | $3,569 | $9,262 |
| | | Total Per Month | | $22,216 |

## Item 10  Timetable Printing

NRPC shall reimburse Railroad for the actual cost of any additional timetable set-up and printing costs incurred by reason of NRPC schedule changes on the Hudson Line.

(*) Ticket clerk position does not become effective until 4-1-90.

MN-A-IV

APPENDIX V

PERFORMANCE PAYMENTS AND PENALTIES

MN-APPS

APPENDIX V

<u>PERFORMANCE PAYMENTS AND PENALTIES</u>

Performance payments will be paid for a route when an on-time performance greater than 80% during a month is achieved.  Performance penalties will be assessed against a route when the on-time performance is less than 70% during a month.

A. <u>Performance Calculation</u>

Percentage on-time for a route shown in Table 1 of this Appendix V during a calendar month will be calculated by dividing the number of trains which arrived on-time at the its final destination on a route by the number of trains operated on the route during the month.  In making this calculation, the following conditions will apply:

1.    A trip shall be considered on-time if a train completes its trip between its endpoints on Railroad in the number of minutes (or less) shown in Table 1 of this Appendix V, plus any of the following:

(a)  A 5-minute tolerance.

(b)  Any connection or passenger related holds which are expressly requested by authorized NRPC personnel who have been identified for Railroad in writing.

MN-APP-V

(c)  An additional tolerance for the time lost in changing engines at Croton-Harmon not to exceed 10 minutes.

(d)  An additional tolerance of 2 minutes per car on Train No. 49 when only 1 FL-9 locomotive is operated and the train consist exceeds eight cars.

There will be no other allowable delays or tolerance in determining whether a train is on-time or late.

2.    A train which is annulled or terminated by NRPC before arriving at its end point on Railroad, for reasons not related to conditions on the Hudson Line, will not be counted as late or as operated in calculating the train's monthly on-time performance.

3.    If, because of conditions on the Hudson Line, a train is detoured, re-routed, terminated, or annulled, and fails to operate to any station on the route, the train will be considered late.

4.    A special train or an extra section of a scheduled train which is requested by NRPC shall not be counted in the calculation of on-time performance unless otherwise agreed by the parties.

5.    Railroad shall perform all servicing which is required for safe operation or for basic passenger comfort.

6.      The scheduled date of origin of each train will be used for determining whether a train is includable in a particular period for calculation of performance payments and penalties, regardless of whether the train originates on Rail Lines of Railroad or not.

B. Calculation of Performance Payments

If the percentage of on-time performance is greater than 80% in a month, the performance payment for that month is calculated as follows:

1.      Subtract .800 from the percentage on-time (expressed in three decimal places);

2.      Multiply the resulting amount by the Performance Rate for the train shown in Table 1; and

3.      Multiply that resulting number by the number of trips operated by the train during the month.

C. Calculation of Performance Penalties

If the percentage of on-time performance is less than 70% in a month, the performance penalty for that month is calculated as follows:

1.       Subtract the percentage on-time (expressed in three decimal places) from .700;

2.       Multiply the resulting amount by the Performance Rate for the train shown in Table 1; and

3.       Multiply that resulting number by the number of trips operated by the train during the month.

D. <u>Remittance of Performance Payments and Penalties</u>

Performance payments will be paid to Railroad in accordance with section 5.2 (Billing and Payment).  Penalties may be deducted from the amounts otherwise payable to Railroad pursuant to this Agreement or paid separately to NRPC; provided however, that penalties shall only apply up to the amount of performance payments earned for all trains in the preceding twelve-month period.

E. <u>Revision of Scheduled Times</u>

The Scheduled Time for each train covered by this Appendix V is set forth in Table 1.  Scheduled Time shall also be revised by the parties in the event that the authorized speeds established by federal, state, or local regulation are increased or decreased in a way which is likely to have a significant impact on the operation of a train.  Upon request of NRPC, station stops or services shall be added to or deleted from the operation of a train.  When changes pursuant to the two preceding sentences require a net change in time

of operation which exceeds 10 minutes, the parties shall adjust the schedules to reflect such differences in operating time (unless such adjustment has previously been effected) at the next NRPC timetable change.  For the purposes of the foregoing sentence, upon the request of either party, the parties shall jointly conduct a field test to determine the proper amount of time to be added or deleted as a result of the change in stops; provided, however, that in the event the parties cannot reach agreement concerning such time, the parties specifically agree that operating time shall be reduced or increased by 5 minutes for each regular stop which is eliminated or added to the train operation.

F. Price Level Adjustments

The checkpoint performance rates specified in Table 1 to this Appendix V shall be adjusted annually for price level changes beginning January 1, 1991, based on the relationship of the most recent Third Quarter index from Association of American Railroads (AAR) Quarterly Indices of Chargeout Prices and Wage rates (Table C)-East "Material prices, wage rates and supplements combined (excluding fuel)", to the 1989 Third Quarter index value.  The index value as of the Third Quarter 1989 is 216.4.

MN-APP-V

Appendix V
Table 1

| Route | Train No. | Scheduled Time From Origin (Minutes) | Checkpoint Performance Rate |
|---|---|---|---|
| The Hudson Line (between Poughkeepsie (CP 75 (Mile Post 75.5) and Grand Central Terminal) | | | $473.75 |

Northward

| | Train No. | Scheduled Time |
|---|---|---|
| | 243 M-TH&SA(5) | 89 |
| | 63 DAILY (7) | 92 |
| | 69 DAILY | 90 |
| | 253 DAILY | 88 |
| | 283 DAILY | 92 |
| | 259 M-W (3) | 90 |
| | 287 TH-FR & SU (3) | 92 |
| | 261 M-SA (6) | 83 |
| | 263 FR (1) | 92 |
| | 265 DAILY | 91 |
| | 269 FR & SU (2) | 88 |
| | 49 DAILY | 93 |
| | 271 DAILY | 88 |
| | 247 SA (1) | 89 |
| | 277 SU (1) | 91 |

Southward

| | Train No. | Scheduled Time |
|---|---|---|
| | 242 M-F (5) | 93 |
| | 246 M-F (5) | 88 |
| | 248 M-F (5) | 98 |
| | 250 DAILY (7) | 94 |
| | 48 DAILY (7) | 111 |
| | 282 M (1) | 94 |
| | 256 TU-SA (5) | 94 |
| | 284 DAILY (7) | 98 |
| | 262 DAILY (7) | 95 |
| | 68 M-SA (6) | 95 |
| | 266 FR (1) | 94 |
| | 64 DAILY (7) | 98 |
| | 288 FR-SU (2) | 99 |
| | 244 SA-SU (2) | 94 |
| | 252 SA & SU (2) | 98 |
| | 264 SU (1) | 97 |
| | 70 SU (1) | 94 |

MN-A5T1